UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ROBERT C. MARKS, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:06-cv-01208 |
| | ) | Chief Judge Haynes |
| | ) | |
| STATE OF TENNESSEE | ) | |
| ADMINISTRATIVE OFFICE OF THE | ) | |
| COURTS, | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM

Plaintiff, Robert C. Marks, Jr., filed this action under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12203 and 12133; the Rehabilitation Act of 1973, 29 U.S.C. § 794a; and the Constitution of the United States against the Defendants: the State of Tennessee and the Tennessee Administrative Office of the Courts ("TAOC"). Plaintiff's claims arise out of a state trial judge's decisions in a state legal malpractice action, Atkins v. Marks, (Montgomery Cnty. Cir. Ct., Docket Entry No. 50100330), that Plaintiff unsuccessfully defended. Plaintiff asserts claims for discrimination and retaliation based upon a state trial judge's rulings and treatment of Plaintiff during the post-judgment hearings in Atkins.

Before the Court is the Defendants' renewed motion to dismiss (Docket Entry No. 64), adopting in part their prior motion to dismiss.[1] (Docket Entry No. 6). Defendants contend, in sum, that Plaintiff fails to state sufficient facts for his claims of discrimination and retaliation under the

---

[1]Defendants do not renew their argument under the Rooker-Feldman Doctrine that was subject to earlier proceedings and appeal, as discussed infra.

1

ADA and that Plaintiff's claims are barred under the doctrine of judicial immunity and the applicable statute of limitations. (Docket Entry No. 7). In addition, Defendants now assert that Plaintiff lacks standing for his ADA notice claim for the Defendants' alleged failure to post ADA notices in Tennessee court houses. (Docket Entry No. 65). Plaintiff responds that Defendants are barred from renewing their motion to dismiss, other than on the basis of lack of subject matter jurisdiction, and cannot assert standing as a new ground for dismissal. (Docket Entry No. 66 at ¶ 5).

For the reasons set forth below, the Court concludes that the Defendants' renewed motion to dismiss is proper for consideration; that Plaintiff lacks standing for his ADA notice claims; that the doctrine of judicial immunity applies to bar Plaintiff's remaining ADA claims; and that Plaintiff's complaint fails to allege facts to state claims for violations of the ADA.

### A. Procedural History

In Atkins, the state trial court entered judgment against Plaintiff on June 6, 2002. (Docket Entry No. 1 at ¶ 30). On May 19, 2003, the Atkins plaintiffs filed a post-judgment petition to acquire Plaintiff's equitable assets to satisfy their judgment. Id. On October 16, 2006, after extended proceedings, the state trial court entered judgment on that petition against Plaintiff's assets October 16, 2006. Id. Plaintiff appealed that order to the state appellate court, raising the issue of "[w]hether the trial court erred in holding that the Americans with Disabilities Act and the procedures under Tenn. S. Ct. R. 45 did not apply to trial courts except in cases involving physical barriers and auxiliary aids." Atkins v. Marks, 288 S.W.3d 356, 373 (Tenn. Ct. App. 2008). After reviewing the record, the Tennessee Court of Appeals found that the "issue is without merit." Id. The Tennessee Supreme Court denied Plaintiff's application for appeal on February 2, 2009. Id. at 356.

In the interim, on December 20, 2006, Plaintiff filed this action and on February 27, 2007,

Defendants moved to dismiss under Fed. R. Civ. P. 12(a)(1), (6) and (h)(3). (Docket Entry No. 6). Specifically, Defendants asserted that Plaintiff's complaint failed to state actionable claims and that Plaintiff's claims were barred under the Rooker-Feldman doctrine, judicial immunity doctrine and the statute of limitations. (Docket Entry No. 7). On August 27, 2007, this Court dismissed Plaintiff's claim under the Rooker-Feldman doctrine. (Docket Entry No. 23).

Plaintiff timely appealed and on February 10, 2009, the Sixth Circuit reversed and remanded the action for further proceedings. (Docket Entry No. 33). On March 4, 2009, the Sixth Circuit's mandate issued, but Plaintiff did not take any action to prosecute this action. On November 8, 2011, the Court dismissed Plaintiff's action with prejudice under Fed. R. Civ. P. 41(b) for Plaintiff's failure to prosecute. (Docket Entry No. 35).

Plaintiff filed a timely motion to alter or amend the Court's Order of dismissal under Fed. R. Civ. P. 59(e), (Docket Entry No. 39), asserting that he had been too ill to prosecute this action. Id. On January 5, 2012, the Court referred the action to the Magistrate Judge to conduct further proceedings. (Docket Entry No. 48). On July 11, 2012, the Court amended the November 8, 2011 order of dismissal with prejudice to dismissal without prejudice "to allow the plaintiff to proceed when he is physically able to do so." (Docket Entry No. 52). Plaintiff again moved to alter or amend the judgment on the basis that he could not afford to pay filing fees again, but was now well enough to prosecute the action. (Docket Entry No. 55). The Court granted Plaintiff's motion to alter and amend the judgment and set aside the orders of dismissal in the interests of justice. (Docket Entry No. 61).

## B. Analysis of Complaint

### 1. Plaintiff's State Court Action

Plaintiff is an attorney who was ordered on inactive disability status by the Tennessee Supreme Court on December 12, 2002. (Docket Entry No. 1 at ¶ 27). Plaintiff suffers from: diabetes; diabetic neuropathy in two or more limbs; multiple sclerosis; lymphodema in his left leg; an amputated right leg below his knee; a constricted esophagus causing choking and vomiting; and Liddle's Syndrome that includes numbness in the extremities. Plaintiff is confined to a wheelchair due to the numbness and neuropathy in his limbs. Id. at ¶ 23.

Plaintiff contracted an infection in his right foot, resulting in an amputation of the front four inches of his right foot and surgery on a preexisting ulcer on Plaintiff's left toe on September 13 and 16, 2005.[2] Id. at ¶ 32. Plaintiff was under continuous home heath care and therapy from September 2005 to early June 2006. Id. at ¶ 33. Plaintiff alleges that these medical complications arose due to the strain and stress of preparing for the Atkins post-judgment hearing. Id. Plaintiff's toe was entirely amputated on November 19, 2005. Id. at ¶ 32.

Plaintiff requires assistance for any court proceeding. Plaintiff's medical restrictions limit him to standing for fifteen minutes or sitting for two hours. Id. At these limits, Plaintiff experiences pain and needs bed rest to recuperate. Id. Plaintiff is substantially limited in his abilities to walk, stand, sit, perform manual tasks that require fine motor skills, breath, swallow, eat, perceive danger of injury, and his ability to concentrate and organize paperwork. Id. Plaintiff's complaint alleges that he was hospitalized at least ten times between January 2001 and March 2006 because of his medical

---

[2]The Court notes that some of the dates in Plaintiff's complaint are erroneous, and the Court has changed the erroneous dates to reflect the correct dates of each event.

conditions. Id. at ¶ 29.

Plaintiff's federal claims stem from a state post-judgment collection proceeding that consisted of three hearings conducted between August 31, 2005 and July 13, 2006. The first post-judgment petition hearing was held on August 31, 2005. Id. at ¶ 31. The hearing lasted a full day and the parties did not complete their proof. Id. The plaintiff in Atkins moved to continue the hearing to December 20, 2005. Id. at ¶ 34. During this time, Plaintiff had limited legal representation by Barbara S. Freemon. Id. at ¶ 35.

On December 6, 2005, the Atkins plaintiff called Freemon and informed her that the hearing would have to be set for December 20, 2005. Id. Freemon informed Plaintiff. Id. Plaintiff alleges that he became agitated and upset by the prospect of being unable to defend during the hearing on December 20, 2005 because of his poor health and continuing recovery from infection and amputations. Id. at ¶ 36. During a nurse visit on December 6, 2005, Plaintiff suffered a seizure and high blood pressure for which Plaintiff was transported to the hospital by ambulance. Id. at ¶ 37. Although Plaintiff did not require overnight hospitalization, Plaintiff alleges that he was too ill to prepare a motion to continue the December 20, 2005 hearing. Id. at ¶¶ 37-38. Plaintiff objected to setting the hearing on December 20, 2005 contending that his medical condition was not sufficiently improved after his toe amputation. Id. at ¶ 34. In any event, the hearing was continued. Id.

On December 13, 2005, Plaintiff alleges that he filed a request for modification with the TAOC that transmitted his request to the Local Judicial Program ADA Coordinator. Id. at ¶ 39. Plaintiff requested that the state trial court set the hearing after Plaintiff's medical release by his two treating physicians. Id. Plaintiff attached two statements from treating physicians, an endocrinologist and an orthopaedic surgeon, who opined that until at least February 1, 2006 Plaintiff would be unable

5

to spend thirty days in preparation for the hearing. Id.

On December 20, 2005, the state trial judge set a teleconference with the Atkins plaintiffs' counsel and Plaintiff. Id. at ¶ 41. The state trial judge acknowledged Plaintiff's request for modification, but held that the cited procedures did not apply to a judge's decision to set or to continue a case when neither physical barriers nor auxiliary aids were involved. Id. According to the complaint, after the December 20, 2005 teleconference, the state trial judge set the hearing for April 13, 2006, a date that was consistent with the recommendations of the Plaintiff's treating physicians. Id. at ¶ 42. Plaintiff alleges that the Local Judicial Program ADA Coordinator abrogated her duty to the state trial judge by acting on his request on December 21, 2005, only after the state trial judge's ruling. Id. at ¶ 43.

Plaintiff's complaint alleges that a recurrence of his foot infection occurred that spread to his right leg below the knee, requiring amputation on March 21, 2006. Id. at ¶ 56. As such, the April 13, 2006 hearing was continued to June 30, 2006 after the parties and the state trial judge participated in a teleconference to agree upon a new hearing date. Id. at ¶¶ 68-69. Thereafter, Plaintiff's complaint alleges that he filed another Request for Modification on June 26, 2006 to limit the remaining hearings to less than an entire day. The trial court's ADA Coordinator denied Plaintiff's request on the grounds that the request was a judicial matter and was not within the scope of Tenn. Supreme Court Rule 45[3] because neither a physical barrier nor auxiliary aid was involved. Id. at ¶

---

[3]Tenn. Supreme Court Rule 45:

> The administrative director of the courts is authorized to establish any policies and procedures that may be necessary to assist courts with compliance with the Americans with Disabilities Act, 42 U.S.C. 12131 et. seq. The Supreme Court shall approve any such policies and procedures prior to implementation. Participants in the judicial system shall comply with any policies and procedures that may be implemented. This rule shall

70. According to Plaintiff, the state trial judge appealed[4] the ADA Coordinator's denial of the Plaintiff's request, and Plaintiff alleges that the state trial judge inappropriately referred to the Plaintiff's cognitive difficulties that were correlated by neurological tests. Id. at ¶¶ 71, 74.

The June 30, 2006 hearing was set for only three hours. Id. at ¶ 73. Plaintiff alleges that he only subpoenaed the witnesses that he anticipated could finish within three hours. Id. Plaintiff also alleges that the state trial judge frequently reprimanded Plaintiff, flustering him and making the hearing worse for him. Id. at ¶ 75. Plaintiff also alleges that at the hearing, the state trial judge improperly mentioned that Plaintiff submitted another Request for Modification. Id. at ¶ 76. Plaintiff alleges that at the end of the hearing, Plaintiff forgot a question that he had begun to ask on redirect examination prior to an interruption. Id. at ¶ 77. As such, Plaintiff alleges that he asked the state trial judge what the question was and the state trial judge "said he did not know with a bemused look. Both opposing counsel chucked at this. The net effect was the effect of this disability of plaintiff was being laughed at. [The state trial judge] refused to acknowledge that this had happened." Id. Plaintiff alleges that his concentration and memory are negatively affected by his multiple sclerosis. Id.

The state trial court set the final three-hour hearing for July 13, 2006. Id. at ¶ 78. Plaintiff alleges that the state trial judge shortened the period for issuance of subpoenas and quashed two of Plaintiff's three subpoenas as unreasonable, oppressive and untimely. Id. Plaintiff alleges that he

---

    apply to all courts in this state, including without limitation, municipal courts, general sessions courts, juvenile courts, circuit courts, chancery courts, criminal courts, and the respective appellate courts.

[4]Plaintiff's complaint alleges that the state trial judge "on his own initiative appealed the decision of the Local Judicial Program ADA Coordinator as Presiding Judge of judicial district without the plaintiff initiating an appeal as the person whose Request had been denied. There is a clear absence of jurisdiction for a Judge to appeal a non-judicial decision in the absence of an appeal by the person making the request." Id. at ¶ 71.

assumed that he would have thirty days rather than thirteen days prior to the next hearing. Id. at ¶ 79. Plaintiff alleges that the state trial judge was not concerned about Plaintiff's illnesses when setting the hearing dates. Id. The TAOC refused Plaintiff's Request for Modification of thirty days prior to the next hearing to recuperate and to subpoena the remaining witnesses. Id. at ¶ 80. The TAOC found that the additional time would unconstitutionally delay and deny the other party the right of access to the courts. Id. On September 14, 2006, the state trial court issued its memorandum opinion that allegedly included complaints about the delays in the action due to the modifications and accommodations for Plaintiff's disability. On October 16, 2006, the state trial court entered its judgment.

### 2. Tennessee Judicial ADA Policy

Plaintiff's complaint alleges that on March 21, 2005, the Tennessee Supreme Court adopted its judicial policy on disabilities. Id. at ¶ 45. Paragraph III of this policy extends its coverage to all courts under Tenn. S. Ct. Rule 45. Id. at ¶ 46. Paragraph V of the adopted policy states:

> **It shall be the policy of the Judicial Branch of the State of Tennessee to prohibit discrimination against any qualified individual on the basis of physical or mental disability in accessing or participating in its judicial programs.** The Judicial Branch shall conduct its services, program or activities, when viewed in their entirety, in a manner that is readily accessible to and usable by qualified individuals with disabilities.

Id. at ¶ 47 (emphasis added). Plaintiff's complaint alleges that this judicial ADA policy was amended on March 21, 2006, to authorize the TAOC to investigate the facts underlying appeals and to utilize the dispute resolution processes. Id. at ¶ 57. Plaintiff alleges that these amendments were implemented as a direct result of the Atkins case. Id. According to Plaintiff, this policy applies to all trial and appellate courts and that notices of the policy are required to be posted in all

courthouses.

Plaintiff alleges that notices required under the state judicial ADA policy are not posted in the Montgomery County Courthouses nor in the Supreme Court building in Nashville. Id. at ¶ 59. Plaintiff alleges that despite being required by the policy, the summons and subpoenas issued by the trial courts lack such notices. Id. at ¶ 60. Plaintiff alleges that the only notice given is the clerks' wheelchair symbol stamp and statement: "ADA – For assistance call [telephone number of the Local Coordinator.]" Id. Plaintiff alleges that "[t]he correct Notice would give the names, telephone numbers and e-mail addresses of the Local Coordinator and the State Coordinator, with an explanation that . . . the ADA [policy] applies to more than physical barriers and auxiliary aids." Id. Plaintiff also alleges that the Local Judicial Program ADA Coordinator in Montgomery Country did not post notices for more than one-hundred days after the election. Id. at ¶ 65.

Plaintiff seeks injunctive relief to compel the Defendants to compliance with Tennessee's judicial ADA policy and to prevent the Defendant from further violations. Plaintiff also seeks a declaratory judgment that the Defendants' policies, practices, and procedures have prevented and continue to prevent Plaintiff from full access to the court system. Plaintiff seeks compensatory damages, attorneys' fees and costs. Id. at ¶¶ 90-94.

### C. Conclusions of Law

As a threshold issue, the Court addresses Plaintiff's challenges to the Defendants' renewed motion to dismiss under Fed. R. Civ. P. 12 as inappropriate given the Defendants' prior motion to dismiss. In ruling on that motion, this Court and the Sixth Circuit addressed only the Rooker-Feldman doctrine.

Under Fed. R. Civ. P. 12(g), "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes

a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." The purpose of Fed. R. Civ. P. 12(g) is to "prevent the dilatory motion practice fostered by common law procedure . . . whereby numerous pretrial motions could be made, many of them in sequence, a course of conduct that often was pursued for the sole purpose of delay." Davis v. City of Dearborn, No. 2:09-CV-14892, 2010 WL 3476242, at *3 (E.D. Mich. Sept. 2, 2010).

Given the limited prior ruling, the Court concludes that the Defendants have not waived any of these grounds for dismissal and the Court's consideration of the Defendants' renewed motion to dismiss is appropriate. See Sharma v. Skaarup Ship Management Corp., 699 F. Supp. 440, 444 (S.D. N.Y. 1988). In addition, the issue of standing cannot be waived by the parties and may be addressed at anytime. Wendrow v. Mich. Dept. of Human Servs., No. 08-14324, 2012 WL 1032691, at *2 (E.D. Mich. Mar. 27, 2012).

As to the merits of the Defendant's renewed motion to dismiss, "a civil complaint only survives a motion to dismiss if it 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Courie v. Alcoa Wheel & Forged Prods., 577 F.3d 625, 629 (6th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted)). The Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff," but "need not accept as true legal conclusions or unwarranted factual inferences . . . and [c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." Tam Travel, Inc. v. Delta Airlines, Inc., 583 F.3d 896, 903 (6th Cir. 2009) (citations and quotation marks omitted).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain

statement of the claim showing that the pleader is entitled to relief." Iqbal, 556 U.S. at 677 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. "A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id. (citing Twombly, 550 U.S. at 555, 557).

> **To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"**

Iqbal, 556 U.S. at 678 (emphasis added).

> The Supreme Court also laid out the underlying principles of this analysis:
>
> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . .
>
> Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id., at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> **In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions**

> **can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.**

Id. at 678-79 (emphasis added).

"A motion under Rule 12(b)(6) is directed solely to the complaint itself . . . [.]" Sims v. Mercy Hosp. 451 F.2d 171, 173 (6th Cir. 1971). The Sixth Circuit has taken a "liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6)." Armengau v. Cline, 7 Fed Appx. 336, 344 (6th Cir. 2001). "If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings. Id. (citing Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999)).

### 1. Standing

Defendants assert that Plaintiff lacks standing on his ADA notice claim because Plaintiff does not "allege that he has suffered any actual, concrete injury [as a result of the lack of ADA notices posted in the courthouses or stamped on the subpoenas or summones]. Nor does he allege that the failure to post the signs or include it in court-issued documents will result in an imminent injury to him." (Docket Entry No. 65 at 3). In response, Plaintiff contends that the State's failure to post the appropriate ADA notices is "part of the conduct that injured him." (Docket Entry No. 66 at ¶ 9).

The threshold requirement for any civil action is a "case or controversy" under Article III of the Constitution asserted by a plaintiff who has standing to raise the issue. In determining whether a "case or controversy" exists and whether the named plaintiff has standing to complain, the Supreme Court stated in Warth v. Seldin, 422 U.S. 490, 508, 517-18 (1975):

> We hold only that a plaintiff who seeks to challenge exclusionary zoning practices **must allege specific, concrete facts demonstrating that the challenged practices**

**harm him, and that he personally would benefit in a tangible way from the court's intervention. Absent the necessary allegations of demonstrable, particularized injury, there can be no confidence of "a real need to exercise the power of judicial review"** or that relief can be framed "no broader than required by the precise facts to which the court's ruling would be applied."

* * *

The rules of standing, whether as aspects of the Art. III case-or- controversy requirement or as reflections of prudential considerations defining and limiting the role of the courts, are threshold determinants of the propriety of judicial intervention. **It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers.**

(citation and footnote omitted and emphasis added); accord Cnty. of Riverside v. McLaughlin, 500 U.S. 44 (1991) ("At the core of the standing doctrine is the requirement that `a plaintiff [must] allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'") (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)). As a general rule, standing should be determined as a preliminary matter through an examination of the allegations contained in the complaint. Haskell v. Washington, 864 F.2d 1266, 1276 (6th Cir. 1988). The plaintiff's allegations must be accepted as true and if necessary, the complaint can be supplemented by affidavit that the Court can order to be filed. Id.

This "threat of injury" must be both "real and immediate" not "conjectural" or "hypothetical." City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983). "Mootness [also] results when events occur during the pendency of a litigation which render the court unable to grant the requested relief." Carras v. Williams, 807 F.2d 1286, 1289 (6th Cir. 1986). A potential exception may lie where the issues of standing and the merits are inextricably intertwined, City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239 at 242 n.5 (1983), or where the action involves a class under Rule 23. McLaughlin, 500 U.S. at 59.

13

For standing to maintain an action for injunctive relief for an alleged deprivation of a federally protected right, the Supreme Court has held that "[t]he equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again -- a 'likelihood of substantial and immediate irreparable injury.'" Lyons, 461 U.S. at 111 (citation omitted). Exceptions to this rule arise for the type of important legal issue that is "capable of repetition, yet evading [judicial] review," Kremens v. Bartley, 431 U.S. 119, 133 (1977).

For his ADA claims, Plaintiff's alleges the following facts:

> Plaintiff lost his leg in this case because he could not get a reasonable modification in this case in any simple, proper and timely fashion. Even after plaintiff lost his leg, the notices are not posted, not even at the Supreme Court Building in Nashville. When a state trial judge enters an order holding that the ADA does not apply to the policies and procedures of the courts beyond physical barriers and auxiliary aids in addition to not posting notices, how are court personnel to be expected to take the ADA Policy seriously when court policies and procedures are concerned? The atmosphere created by the failure to post notices was the atmosphere that supported the actors who did not give the plaintiff a reasonable modification. Injunctive relief granted by this Court will prevent this from happening in the future.

(Docket Entry No. 66 at ¶ 11).

Here, Plaintiff's complaint lacks factual allegations of any injury in fact or any threat of future injury fairly traceable to the alleged lack of ADA notices. Plaintiff's central claim is that during the Atkins litigation, his alleged medical disabilities required continuances. The Court concludes that the allegations in Plaintiff's complaint do not sufficiently reflect that Plaintiff's alleged failure to receive continuances was related to the alleged lack of ADA notices in Tennessee courthouses. Plaintiff's complaint reflects his actual knowledge of Tennessee's ADA judicial policy. Thus, the Court concludes that Plaintiff lacks standing to assert any ADA claim based upon the

alleged lack of notices because Plaintiff has not suffered any personal injury attributable to the alleged lack of ADA notices.

## 2. Statute of Limitations

Defendants contend that some of Plaintiff's claims are barred by a one year statute of limitations. Plaintiff asserts that "[n]o monetary damages are sought for any events occurring prior to December 20, 2005. To the extent the failure to post and use notices in violation of the law are involved, these are continuing violations of 28 C.F.R. 35.106." (Docket Entry No. 8 at 16).

On this issue, the Court must consider the "most analogous state law and adopt its limitations period" as the ADA and the Rehabilitation Act do not provide a statute of limitations. McCormick v. Miami Univ., 693 F.3d 654, 663 (6th Cir. 2012). The most analogous state law is the personal injury statute of limitations. See id. Here, the Court adopts the one year statute of limitations, consistent with the personal injury statute provided in Tenn. Code Ann. § 28-3-104. Thus, all of Plaintiff's claims prior to December 20, 2005 are barred as untimely. Plaintiff's post-December 20, 2005 claims are addressed separately.

## 3. Judicial Immunity

The core of Plaintiff's remaining ADA claims challenges the state trial judge's decisions in Atkins. Defendants assert that these claims are based solely upon the state trial judge's exercise of his discretionary judicial functions and as such, are barred by the judicial immunity doctrine. (Docket Entry No. 7 at 7). Plaintiff responds that the state trial judge "acted beyond his judicial immunity when he clearly purported to decide a Request for Modification instead of the Local Coordinator." (Docket Entry No. 8 at ¶ 41). Further, Plaintiff contends that "[j]udges are employees of the Judicial Branch. They are expressly bound by the Judicial ADA Policy." Id. at ¶ 40. Also, Plaintiff asserts

15

that the TAOC cannot rely upon the judicial immunity of the state trial court judge. Id.

In adopting the ADA, Congress abrogated the State's Eleventh Amendment immunity from actions in federal court for the ADA claims. Tennessee v. Lane, 541 U.S. 509, 533 (2004). Yet, judges sued under the ADA still "enjoy judicial immunity from suits arising out of the performance of their judicial functions." Brookings v. Clunk, 389 F.3d 614, 617 (6th Cir. 2004). This immunity from damages extends to constitutional violations. Pierson v. Ray, 386 U.S. 547, 554 (1967). Tennessee recognizes the doctrine of judicial immunity. Harris v. Witt, 552 S.W.2d 85, 85 (Tenn. 1977); see also Houston v. Tennessee, No. 3:10-CV-482, 2011 WL 1527478, at *8 (E.D. Tenn. April 20, 2011). Judicial immunity exists even if a judge acts corruptly or with malice. Brookings, 389 F.3d at 617.

Judicial immunity, however, is unavailable if the judge's challenged acts were non-judicial in nature. Id.; see also Mercer v. HCA Health Servs. of Tenn., Inc., 87 S.W.3d 500, 504 (Tenn. Ct. App. 2002). Another exception to judicial immunity arises where a judge acts outside of his or her judicial authority or acts in the complete absence of jurisdiction. Mireles v. Waco, 502 U.S. 9, 11 (1991).

To determine whether a challenged act is judicial, the Supreme Court established a two-prong test:

(1) Whether the act is a function that is normally performed by a judge; and

(2) Whether the parties dealt with the judge in his or her judicial capacity.

Stump v. Sparkman, 435 U.S. 349, 362-63 (1978).

Plaintiff's remaining claims relate to the state trial judge's rulings to grant or deny continuances and the trial judge's alleged comments during trial. "The granting or denial of a motion

for a continuance lies in the sound discretion and prejudice to the party seeking a continuance." Moorehead v. State, 409 S.W.2d 357, 358 (Tenn. 1966). Thus, all of the orders, rulings and comments of the state trial judge in the context of trial proceedings were judicial acts and are acts that are normally performed by a judge. In addition, the parties were dealing with the judge in his judicial capacity. Because the trial judge's rulings involve discretionary judicial functions, the Court concludes that liability under the ADA or the Constitution for those acts are barred by the judicial immunity doctrine.

Moreover, the Defendants contend that neither the State of Tennessee nor the TAOC possesses the authority to restrict a trial judge's management of his cases. The statutory duties of the administrative office of the courts are set forth in Tenn. Code Ann. § 16-3-803 that provides, in part:

> (a) The administrative director of the courts shall work under the supervision and direction of the chief justice and . . . assist the chief justice in the administration of the state court system **to the end that litigation may be expedited and the administration of justice improved.**

Id. § 16-3-803(a) (emphasis added). Tennessee Supreme Court Rule 45 also provides that "[t]he administrative director of the courts is authorized to establish any policies and procedures that may be necessary to assist courts with compliance with the Americans with Disabilities Act." Tenn. Sup. Cr. R. 45.

Here, Plaintiff names as Defendants only the State of Tennessee and the Tennessee Administrative Office of the Court. (Docket Entry No. 1, Complaint). As to the Defendant State of Tennessee, Plaintiff appealed the trial judge's ruling and the Tennessee appellate court found Plaintiff's related ADA claims to be "without merit." Atkins, 288 S.W.3d at 373. The Tennessee Supreme Court denied the Plaintiff's application for permission to appeal. Id. at 356. The Court

concludes that by Plaintiff's appeal in Atkins, the State of Tennessee has decided Plaintiff's ADA claims.[5] The Court concludes that Plaintiff's attempt to circumvent the doctrine of judicial immunity by naming as Defendants the State of Tennessee and the Administrative Office of the Court fails.

### 4. Failure to State a Claim

Assuming a proper Defendant is before the Court, the Court considers Plaintiff's remaining ADA claims. Title II of the ADA provides:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity.

42 U.S.C. § 12132. To establish a claim under Title II of the ADA, Plaintiff must show:

> (1) he is a qualified individual with a disability;
>
> (2) he was excluded from participation in or denied the benefits of Tennessee's judicial program or was otherwise subject to discrimination; and
>
> (3) that such exclusion was due to his disability.

Dillery v. City of Sandusky, 398 F.3d 562, 567 (6th Cir. 2005).

Defendants assert that Plaintiff does not allege sufficient facts to state a claim for disability discrimination under Title II because Plaintiff "makes no allegation that any such disability limited his access to the Tennessee courts or any other State services or programs." (Docket Entry No. 7 at 15). In addition, Defendants contend that Plaintiff's factual allegations do not describe any denial of benefits or exclusion from participation. Defendants also assert that Plaintiff cannot establish a claim of retaliation under the ADA because the state trial judge "bent over backward to

---

[5]An agency of the State is, in effect, the State. Alabama v. Pugh, 438 U.S. 781, 782 (1978). For actions under section 1983, where a state official is sued in his official capacity, the real party is the State. See Gean v. Hattaway, 330 F.3d 758, 765 (6th Cir. 2003).

accommodate Plaintiff by granting Plaintiff's requests for continuances and continuing the proceedings in the <u>Atkins</u> case more than six months." <u>Id.</u> at 16-17. In response, Plaintiff asserts the following argument:

> The defendant have conceded in the court and TAOC proceedings that [Plaintiff] is a qualified person with a disability. This *Response* documents the dysfunctionality of the Judicial ADA Policy that denied [Plaintiff] the benefits of the Judicial ADA Policy, and the exclusion is due to his disability, a type of disability that is not easily addressed by building designs and auxiliary aids, beyond which the defendants show a clear animus to limit the scope of the Judicial ADA Policy.

(Docket Entry No. 8 at ¶ 42).

Here, the state trial judge granted all of Plaintiff's requests for continuances based upon Plaintiff's medical conditions. <u>Id.</u> In December 2005, the trial judge set the next hearing for more than two months after February 1, 2006, the date set by Plaintiff's treating physicians. After Plaintiff's foot infection, the April 13, 2006 hearing date was continued to June 30, 2006. The June 30, 2006 hearing was limited to three hours with another three hour hearing on July 13, 2006. The Court deems these reasonable accommodations were made for Plaintiff in the state court proceedings. Accordingly, the Court concludes that Plaintiff fails to state a claim for relief under the ADA.

### D. Conclusion

For these reasons, the Court concludes that Plaintiff lacks any standing to sue based upon the posting of ADA notices in Tennessee courthouses; that Plaintiff's claims are barred by the judicial immunity doctrine, and assuming a proper Defendant for any ADA claim, Plaintiff's complaint fails to allege facts that state actionable claims under the ADA. Accordingly, Defendants' motion to dismiss should be granted, and Plaintiff's claims should be dismissed with prejudice.

An appropriate Order is filed herewith.

**ENTERED** this _1st_ day of January, 2013.

                                                   WILLIAM J. HAYNES, JR.
                                                   Chief Judge
                                                   United States District Court